```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF MISSOURI
                      EASTERN DIVISION


UNITED STATES OF AMERICA,      )
                               )
          Plaintiff,           )
                               )
     v.                        )    No. 4:06 CR 374 SNL
                               )                     DDN
DANTE ROSS,                    )
                               )
          Defendant.           )
```

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This action is before the court upon the pretrial motions of the parties which were referred to the undersigned United States Magistrate Judge under 28 U.S.C. § 636(b).  An evidentiary hearing was held on August 16, 2006.

Defendant Dante Ross, through counsel, has filed oral (Doc. 13) and documentary (Doc. 15) motions to suppress identification evidence.  From the evidence adduced at the hearing the undersigned makes the following findings of fact and conclusions of law:


**FACTS**

1.  During 2005 and 2006 Federal Bureau of Investigation Special Agent Candace Wessels investigated defendant Dante Ross regarding the purchase of two automobiles with counterfeit bank checks.  One of the auto purchases occurred on April 11, 2004, in Oleatha, Kansas.  The other occurred in Columbia, Missouri, on November 20, 2004.  The investigation indicated that Ross was involved in both transactions.


Oleatha, Kansas sale

2.  The Oleatha, Kansas, victim was Sabrina Decker, who described to law enforcement officers two persons to whom she sold her vehicle.  Before April 11, 2004, Ms. Decker advertised her vehicle for sale on an internet website.  She was contacted by telephone by an individual who identified himself as a Mr. Payne.  Thereafter, on two different days, two people met with Ms. Decker and her boyfriend in the parking lot

outside her place of employment.  Ultimately, on April 11, 2004, Ms. Decker sold her car to one of the individuals.

     3.    During 2006, Agent Wessels arranged for the creation of two groups of photographs, Government Exhibits 1A and 1B, for presentation to Ms. Decker[1] in Oleatha, Kansas.

     4.    Exhibit 1A is comprised of six black and white photographs on a single sheet, each photo being approximately 1.5 inches by 2 inches in size.  All six subjects are black men, appearing to be of similar ages, skin tones, and physical size.  Each is clean shaven except for a moustache; each has a similar short hair style on the crown of the head, while the lengths of the hair down the neck differ.  None wears glasses.  See Ex. 1A.

     5.    Exhibit 1B also is comprised of six black and white photographs on a single sheet, each photo being approximately 1.5 inches by 2 inches in size.  All six subjects are black men, appearing to be of similar ages and physical size.  Each is clean shaven except for a moustache; each has a similar short cropped hair style.  The skin tones of subjects 1 and 2 appear to be darker than those of the other subjects.  All of the subjects are wearing eyeglasses.[2]  See 1B.

     6.    Agent Wessels sent the two photographic arrays to the FBI in Kansas City for presentation to Ms. Decker.  Wessels did not tell the Kansas City office which of the photographs depicted Dante Ross.

     7.    On May 3, 2006, the FBI met with Ms. Decker at her place of employment and showed her both photo spreads, which she examined. Decker was told that the people she dealt with may or may not be depicted among the displayed photos.  The agents who presented the arrays to Ms. Decker did not indicate in any fashion which photograph or photographs to select.  Ms. Decker identified subject 4 (later identified as defendant Dante Ross) on Exhibit 1A as the principal

---

[1] Agent Wessels also contacted Ms. Decker's boyfriend to see whether he would view a photo array.  He declined to do so, stating that it had been so long ago that he could not identify anyone.

[2] Agent Wessels understood that suspect Shawn Bowens wears eyeglasses, while suspect Dante Ross does not.

person she dealt with in the sale of her vehicle. She identified[3] the other person involved in the transaction as subject 2 (later identified as Shawn Bowens[4]) on Exhibit 1B.

### Columbia, Missouri sale

8. Before November 20, 2004, Christopher Mulholland advertised his automobile for sale on the internet. He and a prospective buyer, identified to him as Jason Tilmon, negotiated by email for a month. Because Mulholland lives in the St. Louis area and the prospective buyer lived in the Kansas City area, they arranged to meet at a half-way point, in Columbia. On November 20, 2004, Mulholland and his friend Ben Schutzenhoffer met face-to-face with the purchaser for thirty minutes in a parking lot in Columbia. Mulholland remembered that the buyer arrived on foot. Ultimately, all three were standing outside the vehicle when Mulholland sold his vehicle to the buyer for a bank check. After the transaction went sour for Mulholland because the bank check he was given was determined to be counterfeit, he filed a police report of the incident. When he did so, he gave the police a description of the purchaser. He gave the police a height similar to that of defendant Ross; both he and Schutzenhoffer described the purchaser as having a small frame build.

9. Shortly before March 9, 2006, Agent Wessels contacted Mr. Mulholland to see whether he would view a photographic array. He told her that it had been a long time since the transaction, but that he would try. On March 9, 2006, Agent Wessels met with Mulholland and Schutzenhoffer in Mulholland's home in Ballwin, Missouri. She showed each of them separately Exhibit 2. Exhibit 2 is an array on one sheet of six color photographs of six black men, three of whom were depicted on Exhibit 1A. Each photograph is approximately 1.5 inches by 2 inches. All six subjects appear to be similar in age and body size. All six

---

[3] The hearing evidence did not include the amount of time Ms. Decker examined the arrays before making her identifications and it did not include the degree of certainty in her identifications.

[4] Shawn Bowens has pled guilty in a companion case.

were clean shaven except for moustaches.  None wore eyeglasses.  The hairstyles and skin tones of all appear to be similar.  See Ex. 2.

10.  Neither Mulholland nor Schutzenhoffer were told that a subject under investigation was included in the array.  Rather, they were told that the person they dealt with might not be in the photo spread and that they should identify a subject only if they were certain it is the person.  After looking at the array for seven minutes, Mr. Mulholland said he could not identify anyone, but if he had to do so he would pick subject 3.  The identity of subject 3 is unknown to Agent Wessels.  When Mr. Schutzenhoffer studied the array separately and independently of Mulholland, he immediately said, "I definitely have to say Four."  Subject 4 was defendant Dante Ross.

### **DISCUSSION**

Defendant Ross argues that the identifications of him on March 9, 2006 (Exhibit 2), by Ben Schutzenhoffer, and on May 3, 2006 (Exhibit 1A), by Sabrina Decker were unconstitutional.  He argues that each identification was the product of procedures that were inherently suggestive and conducive to mistake.

Under the Due Process Clause, identification evidence must be suppressed if it results from procedures that are unnecessarily suggestive and that may lead to an irreparably mistaken identification. Stovall v. Denno, 388 U.S. 293, 301-02 (1967).  Such an identification, however, may be admissible if it is nonetheless reliable.  Neil v. Biggers, 409 U.S. 188, 198 (1972).  Reliability depends upon (1) the witness's opportunity to view the suspect at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's description of the suspect prior to the identification; (4) the witness's level of certainty at the time of the identification; and (5) the length of time between the crime and the identification.  Manson v. Brathwaite, 432 U.S. 98, 114-16 (1977).

The procedures used in the March 9 and the May 3 identifications were not unnecessarily suggestive and were not such that they led to mistaken identifications.  As set forth above, the subjects of each of Exhibit 1A and Exhibit 2 were sufficiently similar that neither

procedure induced either Ms. Decker or Mr. Schutzenhoffer to select defendant Ross's photograph. Thus, it is not necessary to assess whether the identifications were reliable under the <u>Manson</u> factors. <u>United States v. Staples</u>, 410 F.3d 484, 487 (8th Cir. 2005). However, when doing so, the undersigned finds that the circumstances of the April 11, 2004 crime indicate that Ms. Decker's identification was reliable by the application of <u>Manson</u> factors 1 and 2. She was the seller-owner of the car, had a very strong interest in the sale being consummated and she was with the buyer for a substantial period of time. Applying <u>Manson</u> factors 1, 2, and 4 to the November 20, 2004 crime, again Mr. Schutezenhoffer, although not the seller-owner of the vehicle, was present for a transaction that was important to his friend. Further, he expressed strong certainty in his identification on March 9, 2006.

For these reasons,

**IT IS HEREBY RECOMMENDED** that the oral and written motions of defendant Dante Ross to suppress the identification evidence be denied.

The parties are advised that they have until September 8, 2006, to file written objections to this Report and Recommendation. The failure to file timely written objections will result in the waiver of issues of fact on appeal.

/s/ David D. Noce

**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on August 23, 2006.